# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

KATHY ALDERMAN, for herself and )
on behalf of DAVID ALDERMAN, deceased, )
                                       )
       Plaintiff, )
                                         )
       v. )               CAUSE NO.: 1:14-CV-94-TLS
                                         )
CENTRAL PENSION FUND OF THE )
INTERNATIONAL UNION OF OPERATING )
ENGINEERS AND PARTICIPATING )
EMPLOYERS, )
                                         )
       Defendant. )

## OPINION AND ORDER

This matter is before the Court on cross-motions for summary judgment, which address the Complaint's single count alleging entitlement to a disability benefit, pursuant to the Employee Retirement Income Security Act (ERISA) of 1974 § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). On July 28, 2014, the Plaintiff, Kathy Alderman, for herself and on behalf of David Alderman, deceased, filed a Motion for Summary Judgment [ECF No. 10]. The Plaintiff's motion was accompanied by her Memorandum in Support of her Motion [ECF No. 11], a list of Stipulated Facts [ECF No. 12], and an Appendix [ECF No. 13] attaching portions of the pension fund's plan documents. On September 16, 2014, the Defendant, Central Pension Fund of the International Union of Operating Engineers and Participating Employers (the "Plan"), filed its own Motion for Summary Judgment [ECF No. 16]. The Defendant's Memorandum in Support [ECF No. 17] also served as its Response to the Plaintiff's motion. On September 24, 2014, the Plaintiff filed her Response to the Defendant's motion, which also served as her Reply [ECF No. 18]. On October 7, 2014, the Defendant filed its Reply [ECF No. 19]. For the reasons presented

below, the Defendant's Motion will be denied, and the Plaintiffs' Motion will be granted. Further, because the Plan denied the Plaintiff's application for disability benefits based on a perceived procedural deficiency, this case is remanded to the Plan's administrator to consider the substance of the Plaintiff's application.

## FACTUAL BACKGROUND

The parties have stipulated to the material facts. The Plan is a multiemployer benefit plan that is subject to ERISA. The Plan's Board of Trustees (the "Plan Administrator") has discretionary authority to determine eligibility for benefits under the Plan. The Plan provides a disability benefit for participants who suffer a "Total and Permanent Disability."

David Alderman was a member of District 2 of Local 103 of the International Union of Operating Engineers ("Local 103"), and was a participant in the Plan. During the last several years of his life, David Alderman had a number of health conditions, including congestive obstructive pulmonary disease, a heart condition, Hodgkin's disease, Lyme disease, Rocky Mountain Spotted Fever, degenerative bone disease, and fibromyalgia. David Alderman died on December 12, 2012. He was survived by his spouse, Kathy Alderman, who is his heir and beneficiary.

In June 2011, before David Alderman's death, Kathy Alderman contacted a representative from Local 103 and asked what David Alderman needed to do to apply for a disability benefit under the Plan. Although this representative was not the Plan's employee, agent, or fiduciary, and had no authority to bind the Plan, he informed Kathy Alderman that her husband could not apply for a disability benefit until he had received a disability award letter from the Social Security Administration. On July 14, 2011, David Alderman applied for a Social

Security disability benefit [ECF No. 1-1]. In July 2012, while David Alderman's application was pending before the Social Security Administration, Kathy Alderman contacted the same Local 103 representative and was again told that to apply for a disability benefit under the Plan, her husband needed an award letter from the Social Security Administration.

Shortly after David Alderman's death, Kathy Alderman notified the Plan of his death for purposes of claiming her surviving spouse benefit. The Plan responded by sending her an acknowledgment letter dated January 4, 2013, and her qualified preretirement survivor annuity commenced on January 1, 2013. On February 26, 2013, Kathy Alderman and an impartial vocational expert testified before an Administrative Law Judge at a hearing on David Alderman's application for a Social Security disability benefit. On March 8, 2013, the Administrative Law Judge issued a Decision and Order [ECF 1-2] that determined that David Alderman was disabled from June 27, 2011, through his death on December 12, 2012.

Kathy Alderman then immediately called the Plan, on her husband's behalf, to report receipt of the Social Security disability benefit determination. During the call, James Crute, Senior Examiner for the Plan, told her she would need to complete a Plan disability claim application and submit supporting materials. Soon after that she received the Plan's disability application form by mail from Crute. On March 28, 2013, the Plan received the completed application for disability benefits [ECF No. 1-3], including the materials from the Social Security Administration, submitted by Kathy Alderman on her husband's behalf.

The Plan denied the application for disability benefits. In a letter dated August 14, 2013, the Plan explained:

> At the time of Mr. Alderman's death Fund records reflect there was no application for benefits filed with the Fund Office, as required by Section 10.03 of the Plan of Benefits. Therefore, pursuant to the provisions of Sections 11.01, 11.04 and 11.10 of the Plan of Benefits, there is no basis to approve your claim

and make payment of posthumous Permanent and Total Disability Benefits.
Copies of Sections 10.03, 11.01, 11.04 and 11.10 are enclosed for your review.

[ECF No. 1-4]. Kathy Alderman timely appealed the Plan's denial of her claim, but the Plan

denied her appeal in a letter dated October 25, 2013 [ECF 1-5]. The Plan Administrator stated:

> Section 10 of the Summary Plan Description and Rule 10.03 of the Plan of
> Benefits provide that 'an application is only considered filed once it is actually
> received by the Pension Fund office.' Your application for posthumous disability
> benefits was received on March 28th, following your husband's death on
> December 14, 2012 [sic]. Since no pending application had been filed with the
> Fund after [sic] prior to Mr. Alderman's death, the Board concluded there is no
> basis to award you posthumous disability benefits under the provisions of Section,
> [sic] 11.01, 11.04,. [sic] and 11.10 of the Plan of Benefits, as interpreted and
> applied by the [Plan Administrator]. Copies of the relevant Plan provisions and
> excerpts from the SPD discussed above are enclosed for your review.

Kathy Alderman exhausted her administrative remedies, and she filed this suit asking the Court

the review the Plan's decision to deny the claim for disability benefits.


## SUMMARY JUDGMENT STANDARD

The moving party bears the responsibility of informing the court of the basis for summary

judgment and identifying the pleadings, depositions, answers to interrogatories, and admissions,

along with any affidavits that demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Rule 56(a) provides that "[t]he court shall

grant summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." "If no genuine issue of material

fact exists, the sole question is whether the moving party is entitled to judgment as a matter of

law." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996). When cross-

motions for summary judgment are filed, the court looks "to the burden of proof that each party

would bear on an issue of trial." *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir.

2007) (quoting *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)) (internal

quotation marks omitted). When benefits are sought under an ERISA plan, "at trial the plaintiffs

would bear the burden of proving the ERISA beneficiary's entitlement to the benefits of the

insurance coverage, and the defendant would bear the burden of establishing the beneficiary's

lack of entitlement." *Id.* (internal quotation marks omitted).


# DISCUSSION

Judicial review of an ERISA administrator's benefits determination is de novo.

*Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 766 (7th Cir. 2010) (citing *Firestone Tire &

Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). However, when the administrator is vested with

discretionary authority to determine eligibility for benefits or to construe the terms of the plan,

the court asks whether the administrator's decision was "arbitrary and capricious." *Id.* Here, the

Plan of Benefits of the Central Pension Fund of the International Union of Operating Engineers

and Participating Employers Restated and as Amended as of April 8, 2013 (the "Plan

Document") [ECF No. 13-1] grants the Plan Administrator the discretionary authority to make

"determinations as to the eligibility of an Employee to participate and to receive any benefit

provided," "to construe and interpret the terms of the Plan," and to receive "applications for

benefits under this Plan." (Reply in Supp. Def.'s Mot. Summ. J.-Ex. A, ECF No. 20.) The parties

agree that the "arbitrary and capricious" standard applies. (Pl.'s Mem. in Supp. Mot. Summ. J. 8,

ECF No. 11; Def.'s Mem. in Supp. Mot. Summ. J. & in Opp'n to Pl.'s Mot. Summ. J. 7, ECF

No. 17.)

A plan administrator's decision should be upheld provided that "(1) 'it is possible to offer

a reasoned explanation, based on the evidence, for a particular outcome,' (2) the decision 'is

based on a reasonable explanation of relevant plan documents,' or (3) the administrator 'has based its decision on a consideration of the relevant factors that encompass important aspects of the problem.'" *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001) (quoting *Exborn v. Cent. States, Se. & Sw. Areas Health & Welfare Fund*, 900 F.2d 1138, 1142–43 (7th Cir. 1990)). Although this deferential standard applies, it is "not a rubber stamp [and the court] will not uphold a denial of benefits when there is an absence of reasoning in the record to support it." *Cerentano v. UMWA Health & Ret. Funds*, 735 F.3d 976, 981 (7th Cir. 2013) (internal citations omitted). Further, "[s]ometimes the structure of the plan or sheer common sense or inconsistent interpretations will provide the court with a handle for pronouncing the administrator's determination arbitrary and capricious." *Gallo v. Amoco Corp.*, 102 F.3d 918, 922 (7th Cir. 1996).

## A.       Denial of Disability Benefits

ERISA sets forth the minimum notice requirements a plan must meet when benefits are denied. 29 U.S.C. § 1133. The Department of Labor regulation that interprets the statute states that any notification of an adverse benefit determination "shall set forth, in a manner calculated to be understood by the claimant—"

> (i) The specific reason or reasons for the adverse determination;
>
> (ii) Reference to the specific plan provisions on which the determination is based;
>
> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
>
> (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action.

29 C.F.R. § 2560.503-1(g). Although substantial compliance is sufficient, *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 361–62 (7th Cir. 2011), these provisions ensure that a claimant who appeals "will be able to address the determinative issues and have a fair chance to present his case." *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 689 (7th Cir. 1992). Pursuant to these requirements, the Plan sent Kathy Alderman two denial letters that stated the basis for the denial and cited to the specific plan provisions. Despite the several sections referenced in the denial letters, the text of the denial letters shows that Plan Document § 10.03 served as the basis for the denial, which the Defendant's briefing has reiterated.

The Defendant argues that it properly denied the Plaintiff's claim because the Plan Document unambiguously requires the "participant" to file for disability benefits. (Def.'s Mem. in Supp. Mot. Summ. J. & in Opp'n to Pl.'s Mot. Summ. J. 8 ("An application for retirement benefit payments must be filed *by the Participant* for benefit payments to commence. An application is only considered filed once it is actually received by the Pension Fund office." (quoting Plan Document § 10.03, at 4)) (emphasis added).) In this context, the Plan contends that David Alderman was the "participant," and he did not file the application for disability benefits before he died. Instead, Kathy Alderman applied for disability benefits after her husband's death. The Plan further argues that if David Alderman had contacted it while alive, he would have been told that he could file his application immediately, and the Plan Administrator would have made a formal determination once the Social Security Administration returned a favorable decision. Although the Plan concedes that Kathy Alderman "may sue on behalf of her husband," it asserts that "she did not have the authority to apply for benefits on his behalf." (Def.'s Mem. in Supp. Mot. Summ. J. & in Opp'n to Pl.'s Mot. Summ. J. 2.) From its perspective, the plain meaning of "participant" shows that David Alderman had to apply, not his wife; thus, the Plan's denial of

David Alderman's application for a disability benefit was consistent with the governing documents, within its discretion, and not arbitrary and capricious.

The Plaintiff argues that the Plan acted arbitrarily and capriciously when it denied David Alderman's claim for disability benefits because the Plan Document and the summary plan description (the "SPD") [ECF No. 13-2] do not state that a participant must be alive at the time the application for disability benefits is submitted. The Plaintiff asserts that the Plan Document and the SPD are silent on how a participant's death affects one's ability to apply for a disability benefit, and nothing says that failure to file before the death of the participant will result in a denial. The Plaintiff also argues that the Plan is presenting this Court with a basis for denial that is different from the basis used in the administrative proceeding. According to the Plaintiff, the Plan previously denied David Alderman's claim because he was not alive at the time of filing, but now the problem is the filer's identity. The Plaintiff contends that because the Plan Document and SPD do not define "participant," the Plan adopted the meaning established by statute and federal common law. As such, Kathy Alderman is permitted to "stand in the shoes" of David Alderman for purposes of applying for his disability benefit.

The denial letters cite to the Plan Document and the SPD,[1] specifically, Plan Document §§ 10.03, 11.01, 11.04, and 11.10, and SPD § 10. The parties' briefing also cites to sections not mentioned in the denial letters. Section XI of the Plan Document outlines the "Monthly Disability Benefit."

> 11.01 Effective for all applications *filed* on or after January 1, 1996, as defined in *Section 10.03*, if, in the opinion of the Board, as prescribed in Section

---

[1] The record contains excerpts of the Plan Document and the SPD, rather than the unabridged versions. The table of contents for each document shows that both have a lengthy list of defined terms. The parties did not make these definition sections part of the record. The Court is inclined to think that the Plan's definitions for terms would have been helpful to resolve this case, but given the parties' decision to omit this material, the Court assumes that the meanings the Plan assigned to defined terms, as presented in the Plan Document and the SPD, have no bearing on this case's outcome.

1.39 hereof, an Employee suffers a Total and Permanent Disability, such employee shall be entitled to receive a monthly disability benefit, as provided in Sections 11.03 and 11.04 . . . .

(Plan Document § 11.01, at 10 (emphasis added).)

Section 10.03, which addresses "Payment of Retirement Benefits," states by cross-reference the application process for Monthly Disability Benefits.

> <u>10.03</u> An application for retirement benefit payments *must be filed by the Participant* for benefit payments to commence. An application is only considered filed once it is actually received by the Pension Fund office. For purposes of this Plan, the mailbox rule of federal common-law shall not apply. If the application is filed at any time after the first month for which the Participant could have been entitled to such benefits, it will be accepted as an application for benefits as of the earliest date the Participant was entitled to such benefits, up to twelve (12) months immediately preceding the month in which the application is filed.

(Plan Document § 10.03, at 4–5 (emphasis added).) The rest of the section applies specifically to retirement benefit payments to a "Qualified Spouse," or "to a deceased Participant's surviving spouse, Contingent Annuitant or Beneficiary who is eligible to receive benefits." (Plan Document § 10.03, at 4–5.) The appeal denial letter also references SPD § 10, which provides that "[y]ou or your Beneficiary(s) [sic] must complete certain [Plan] forms in order to receive a benefit. . . . The forms must be fully completed following the instructions on the forms . . . . An application is only considered 'filed' once it is <u>actually</u> received by the Fund Office, <u>not</u> the date it is postmarked or mailed." (Compl. Ex. 5, at 3, ECF No. 1-5.)

Section 11.10 discusses when a person's disability benefits begin, and it states in its entirety that,

> [p]ayment of disability benefits shall commence, retroactive, to the first of the month following the month in which the Employee was found to have been disabled by the Social Security Administration, notwithstanding the provisions of Section 10.03, provided the Employee has ceased all disqualifying employment, as defined in Section 5.03, but in no event before six (6) calendar months have elapsed from the date of such determination.

(Plan Document § 11.10, at 18.) Section 11.04 then provides that the monthly disability benefit

ends upon the first of these events to occur:

> (a) his recovery from Total and Permanent Disability;

> (b) his Normal Retirement Date or Special Retirement Date, if the Total and Permanent Disability occurred on or before July 31, 2005 . . . ; and if the Total and Permanent Disability occurred on or after August 1, 2005, his Early Retirement Date or;

> (c) his death.

(Plan Document § 11.04, at 14–15.) Subsection 11.04(c) also adds that "a benefit may be payable

to his designated Beneficiary"

> "[u]pon the death of a Participant who is *not survived* by a Qualified Spouse, and who has commenced receiving disability benefits hereunder at age fifty-five (55) or later, but before he has received total monthly payments equal to the commuted value of sixty (60) payments based on the benefits attributable to contributions for periods ending on or before July 31, 2005.

(*Id.* (emphasis added).)

The denial letters from the Plan do not reference § 11.02, which defines "Total and

Permanent Disability." Section 11.02 defines that term as

> for all applications filed on or after January 1, 1996, as defined in Section 10.03:

> (a) an Employee has been awarded Social Security Disability Benefits in connection with Old Age and Survivors' Insurance coverage based upon a physical or mental condition resulting from a bodily injury, disease or mental disorder; and

> (b) the Participant's treating physician certifies, on a form prescribed by the Board, that such bodily injury, disease or mental disorder is reasonably expected to be permanent and cannot be improved by any known, available medical treatment procedures.

(Plan Document § 11.02, at 10–11.)

### 1.    *Crabtree Affidavit*

In support of its motion, the Defendant submitted the Affidavit of Michael A. Crabtree, who is the Fund Counsel for the Plan. The Affidavit states that "the Board of Trustees has consistently interpreted Section 10.03 . . . as requiring the <u>participant</u> to have filed an application before his or her death, in order to posthumously award benefits to a surviving spouse or beneficiary that would have otherwise been payable to the participant." (Crabtree Aff. 1–2, ECF No. 16-1.) Crabtree also asserts that the Plan "has never recognized or approved an application for benefits" in scenarios similar to Kathy Alderman's, and that the Plan does not reject applications unaccompanied by a Social Security disability award. (Crabtree Aff. 2.)

Without filing a separate motion to dispute the Affidavit's admissibility, N.D. Ind. L.R. 56-1(e), the Plaintiff argues that the Affidavit has impermissibly added to a closed administrative record. *Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 981–82 (7th Cir. 1999) ("[W]hen review under ERISA is deferential, courts are limited to the information submitted to the plan's administrator. . . . [Provided that] there can be no doubt that the application was given a genuine evaluation."). However, the specific reasons in the denial letters need not include the "reasoning behind the reasons." *Gallo v. Amoco Corp.*, 102 F.3d 918, 922–23 (7th Cir. 1996) (identifying that, in this case, the "reasoning behind the reasons" was that the senior plan administrator consistently interpreted the provision that way).

In this case, the Defendant seems to have submitted the Crabtree Affidavit in response to a hypothetical scenario raised in the Plaintiff's opening brief, which attacked part of the appeal denial letter. (Pl.'s Mem. in Supp. Mot. Summ. J. 15–16.) This is not an example of the Plan augmenting "the administrative record with new facts bearing upon the application for benefits," which would occur if the Plan introduced new facts regarding "the applicant's earnings or years

11

of service." *Gallo*, 102 F.3d at 923. Instead, the Plan's Affidavit merely addresses matters already in the administrative record and offers a "reasoning behind the reasons." *Id.* ("When challenged in court, the plan administrator can defend his interpretation with any arguments that bear upon its rationality. . . . [H]e is not limited to repeating what he told the applicant."); *Militello v. Cent. States Se. & Sw. Areas Pension Fund*, 209 F. Supp. 2d 923, 932 (N.D. Ill. 2002) (allowing the plan to submit an affidavit with its reply even though the case had a closed administrative record), *aff'd*, 360 F.3d 681, 686–87 (7th Cir. 2004). Therefore, the Court will consider the Crabtree Affidavit.

### 2.    *Participant*

The parties do not dispute Kathy Alderman's standing to file this lawsuit. The dispute is centered around the timing of the application for disability benefits, which implicates nuances that necessitate precise language. It is undisputed that Kathy Alderman carried out the physical act of filing the application for disability benefits with the Plan. However, Kathy Alderman is not filing a claim for herself. The question is whether David Alderman is entitled to the disability benefit, and the fact that payment may ultimately be made to Kathy Alderman does not transform the claim's nature. *See Hirsch for Estate of Hirsch v. Nat'l Mall & Serv., Inc.*, 898 F. Supp. 977, 982–83 (N.D. Ill. 1997) (discussing *McKinnon v. Blue Cross & Blue Shield of Ala.*, 935 F.2d 1187, 1190–91 (11th Cir. 1991)).

### a.    *Basis Not Changed*

The Plaintiff contends that the Plan has changed the basis for the denial. At a minimum, the Plan has refined its explanation for the denial since the administrative stage. Although both denial letters refer to Plan Document § 10.03, neither letter quotes the passage now relied upon

by the Plan, which is that "[a]n application for retirement benefit payments must be filed *by the Participant* for benefit payments to commence." (Def.'s Mem. in Supp. Mot. Summ. J. & in Opp'n to Pl.'s Mot. Summ. J. 8 (quoting Plan Document § 10.03, at 4)) (emphasis added).) Rather, the denial letters note the timing of David Alderman's death and use the passive voice to deemphasize the filer's identity. Further, only the Plan's second letter quoted the Plan Document, which reiterated that "an application is only considered filed once it is actually received by the Pension Fund office."

Given the earlier discussion of the Crabtree Affidavit and the subtle distinction between the denial letters and the Plan's present argument, the Court is not convinced that the Plan has violated 29 U.S.C. § 1133 by adding a new reason for the denial. The case the Plaintiff cites, *Reich v. Ladish Co.*, 306 F.3d 519 (2002), involved a more substantial change because at the administrative stage the defendant found the plaintiff disabled, but then argued in court that he was not disabled. *Id.* at 524 & n.1 (using the basis given during the administrative phase and ignoring the defendant's "new argument" raised during the litigation). Regardless of a plan administrator's ability to offer "reasoning behind the reasons," the Court is mindful that "[i]f the justification that the plan administrator offers in court is inconsistent with the reason that he gave the applicant, the justification will be undermined." *Gallo*, 102 F.3d at 923.

b.    *Plan's Reading of "Participant"*

Having clarified that the Plaintiff's claim to benefits turns upon the meaning of "participant" under Plan Document § 10.03, the Defendant argues that the plain language of that section unambiguously shows that Kathy Alderman is not entitled to benefits. Federal common law principles of contract interpretation apply to a plan governed by ERISA. *Sellers v. Zurich*

*Am. Ins. Co.*, 627 F.3d 627, 632 (7th Cir. 2010) (citing *Swaback v. Am. Info. Techs. Corp.*, 103

F.3d 535, 540–41 (7th Cir. 1996)). Accordingly, the Plan's terms must be interpreted in "an

ordinary and popular sense, as they would be understood by a person of average intelligence and

experience." *Id.* (quoting *Cannon v. Wittek Cos. Int'l*, 60 F.3d 1282, 1284 (7th Cir. 1995)).

Although a plan administrator vested with discretionary authority "may conclusively interpret

ambiguous terms," *Hightshue v. AIG Life Ins. Co.*, 135 F.3d 1144, 1149 (7th Cir. 1998) a plan

administrator acts arbitrarily and capriciously by controverting the plan's plain meaning,

*Swaback v. Am. Info. Techs. Corp.*, 103 F.3d 535, 540 & n.9 (7th Cir. 1996) (collecting cases), or

by continuing "to add conditions precedent to the award of benefits." *Dabertin v. HCR Manor

Care, Inc.*, 373 F.3d 822, 831 (7th Cir. 2004).

First, apparently agreeing with the Plaintiff's observation that the Plan Document and the

SPD do not define "participant," the Defendant points to the statutory definition of "participant,"

the case of *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), and the Crabtree

Affidavit, to show that its interpretation of "participant" is the "only reasonable interpretation."

(Def.'s Mem. in Supp. Mot. Summ. J. & in Opp'n to Pl.'s Mot. Summ. J. 9.)[2] According to the

Defendant, § 10.03's provision that "[a]n application . . . must be filed by the Participant" clearly

---

[2] The Plan certainly had the ability to tailor the definitions for the terms used in the Plan Document. *See Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S. Ct 604, 612 (2013) (noting that a plaintiff's cause of action under ERISA § 502(a)(1)(B) asks a court to determine the participant's rights "under the terms of the plan"); *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300–01 (2009) (stating that ERISA is built around reliance on the plan documents, which are intended to provide clear instructions and avoid the need to examine external documents). Other than defining "Total and Permanent Disability," the portions of the Plan Document in the record do not define any terms, including "participant." *See Gill v. Bausch & Lomb Supplemental Ret. Income Plan I*, 594 F. App'x 696, 698 (2d Cir. 2014) (analyzing the plan document's definition for "Participant" and "Retired Participant," and determining the terms to be mutually exclusive under the plan); *Lucas v. Challenge Mac. Co. Salaried & Non-Union Emp. Ret. Plan*, 144 F. Supp. 2d 855, 889 (W.D. Mich. 2001) ("The definitions provided under ERISA . . . . do not purport to provide mandatory language for individual Plan documents or to supercede definitions provided in those documents. Plaintiff cites no cases supporting her claim that ERISA definitions trump the definitions contained in Plan documents themselves.").

conveys that "participant" means a living David Alderman, period. Second, the Defendant concedes that Kathy Alderman has "derivative standing" to bring this lawsuit, but asserts that this is irrelevant for determining whether the claim was properly filed with the Plan.

The offered sources do not establish the Defendant's reading of "participant." The statutory definition of "participant" is

> any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . , or whose beneficiaries may be eligible to receive any [type of] benefit.

29 U.S.C. § 1002(7). This definition's inclusion of "former employee," along with allowing that person's beneficiaries to qualify as a participant, shows that being alive is not an absolute requirement to fit within the definition. Further, under the federal regulations for ERISA premium rates, "participant" is defined as encompassing deceased individuals with surviving beneficiaries. 29 C.F.R. §§ 4006.2, 4006.6; Premium Rates; Payment of Premiums, 65 Fed. Reg. 75,160, 75,161–62 (Dec. 1, 2000) (to be codified at 29 C.F.R. § 4006.6).[3]

Likewise, *Bruch* defines "participant" for jurisdictional purposes to mean "either 'employees in, or reasonably expected to be in, currently covered employment,' or former employees who 'have a reasonable expectation of returning to covered employment' or who have 'a colorable claim' to vested benefits." *Bruch*, 489 U.S. at 117; *Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir. 1991). As the Plaintiff notes, *Bruch* involved severance benefits after a company was sold and ERISA's disclosure provisions, not the significance of a

---

[3] Before 2000, "participant" included three broad categories of individuals: active, inactive, and deceased. Reorganization, Renumbering, and Reinvention of Regulations, 61 Fed. Reg. 34,002, 34,016 (July 1, 1996) (to be codified at 29 C.F.R. § 4006.2). Subsequently, this regulation was amended to its present form in 29 C.F.R. §§ 4006.2, 4006.6, which does not have these categories explicitly demarcated. Premium Rates; Payment of Premiums, 65 Fed. Reg. at 75,163–64. Despite this, the amended definition "represents no substantive change regarding the 'inactive' and 'deceased' categories," and "counts as participants those individuals with respect to whom a plan has benefit liabilities." *Id.* at 75,161–62.

participant's death. *Id.* at 106. Further, while the Court defined "participant" for jurisdictional purposes, it did not express a view on whether the respondents qualified as participants, *id.* at 118, and the definition provided does not seem to account for the last clause of § 1002(7), presumably because the respondents did not allege that they were beneficiaries. *Id.* at 116. Therefore, *Bruch* is distinguishable and does not clearly show that "participant" only means an employee or former employee that is alive.

The Crabtree Affidavit and the attached form letter provide evidence of the Plan's general practices, but this is not instructive. The Affidavit states that "the Board of Trustees has consistently interpreted Section 10.03 of the Plan of Benefits as requiring the <u>participant</u> to have filed an application before his or her death, in order to posthumously award benefits to a surviving spouse or beneficiary that would have otherwise been payable to the participant." (Crabtree Aff. 1–2.) Crabtree also notes, in conclusory fashion, that "the Central Pension Fund has never recognized or approved an application for benefits filed after the death of a participant by a surviving spouse or beneficiary," (Crabtree Aff. 2); however, Crabtree does not highlight any other time that the Plan confronted the present scenario. This position also lacks a textual basis in the governing documents, as the Defendant concedes "that neither the SPD nor the [P]lan [D]ocument specifically state that the participant must be alive at the time of filing the application." (Def.'s Mem. in Supp. Mot. Summ. J. & in Opp'n to Pl.'s Mot. Summ. J. 10.) Even though the Defendant asserts that stating this requirement explicitly would be "redundant and unnecessary" because "must be filed by the Participant" is an explicit statement of that requirement, (*id.*) this would only be true if the plain meaning of "participant" clearly ties "being alive" to one's status as a participant. As shown above, this is not the case. The Defendant's evidence shows that an application for disability benefits filed without the Social Security

determination would have remained pending, not that § 10.03 shows that David Alderman needed to be alive at the application's filing, and that only he could file it.

Since § 10.03's use of "Participant" does not unequivocally show that a living David Alderman had to file the application, the Court now considers the Plaintiff's argument that the Plan's failure to define "participant" means that the derivative standing principle would allow Kathy Alderman to file the application after her husband's death. Several courts have recognized that a successor-in-interest to a deceased participant or beneficiary may bring suit for pre-death benefits denied by plan providers. *E.g.*, *Yarde v. Pan Am. Life Ins.*, Nos. 94-1167, 94-1312, 1995 WL 539736, at *6 (4th Cir. Sept. 12, 1995) (applying derivative standing doctrine so as to adhere to ERISA's fundamental aim of protecting the interests of plan participants and their beneficiaries); *see also Cottle v. Metro. Life Ins. Co.* No. 92 C 1452, 1993 WL 8201, at *2 (N.D. Ill. Jan. 13, 1993) (same); *Hirsch for Estate of Hirsch v. Nat'l Mall & Serv., Inc.*, 989 F. Supp. 977, 982–83 (N.D. Ill. 1997) (stating that deceased plan participant's spouse had ERISA standing because she stood in the participant's shoes).

The Defendant responds that standing to file a lawsuit is broader than a plaintiff having a successful claim under the plan documents. This is obvious because having standing does not automatically equal a meritorious claim. *See Bruch*, 489 U.S. at 117 (requiring only a "colorable claim to vested benefits" to bring suit). Further, the Defendant's only rebuttal to the Plaintiff's lengthy list of derivative standing cases is to characterize these cases, without citing authority, as illustrating "the legal standing of a surviving spouse to continue processing a claim that was commenced by a participant before their death." (Def.'s Reply 3, ECF No. 19.) This seems to be an overly narrow reading of the cases, considering that the cases do not provide analysis on this procedural point. The Defendant's view would undermine ERISA's remedial purpose because a

plan document that left "participant" undefined would, by default, bar a participant's successor-in-interest from recovering in the participant's shoes. Literal application would also lead to absurd results. For example, if only the participant could file the application for disability benefits, as the Defendant argues, the spouse of a participant who is in a coma could not file an application for disability benefits on his behalf, even if the participant otherwise met the definition for total and permanent disability.

Although the arbitrary and capricious standard affords the plan administrator substantial deference, the Defendant has created a moving target by adding a condition precedent that does not appear in the governing documents and is not a reasonable interpretation of "participant," which is undefined in the record. *Dabertin*, 373 F.3d at 831–32 (affirming the district court's holding that the plan administrator improperly modified the plan, rather than interpreting it, by adding extraneous conditions that were not part of the plan's plain language); *Univ. of Wis. Hosp. & Clinics, Inc. v. Kraft Foods Global, Inc. Grp. Benefits Plan*, 28 F. Supp. 3d 833, 840–42 (holding that the plan administrator's interpretation unreasonably contradicted the plan document's plain meaning when it added limiting language, thereby creating a procedural requirement that enabled it to deny the claim, even though the plan document did not squarely address the situation presented).

As the Defendant concedes, neither the SPD nor the Plan Document specifically state that the participant must be alive when the application is filed. There is no reason to doubt that had Kathy Alderman called the correct person with her inquiry, the Plan would have told her to file an incomplete application while awaiting the Social Security determination, but that is not the question before this Court. Instead, it is whether the Defendant acted arbitrarily and capriciously by denying a claim for disability benefits filed by a wife after her husband's death, which was

denied because the husband needed to be alive at filing (as only he could file it), when the wife did not ask the Plan any questions before her husband died. Neither denial letter directly states that David Alderman needed to file the application with the Plan or quotes § 10.03's key language, "must be filed by the Participant," to show that he had to be alive. The omission of a few words creates a stricter process than use of "Participant" entails, and one would expect that given the harsh penalty of rejecting the application, the Plan Document would provide a statement of this consequence somewhere. *Univ. of Wis. Hosp. & Clinics, Inc.* 28 F. Supp. 3d at 841. Therefore, the Plan's denial of the application was arbitrary and capricious, and the Plan must deem the Plaintiff's application as filed under Plan Document § 10.03.

**B.      Remand**

The Plaintiff's Complaint asks the Court to enter judgment in her favor for an award of benefits. (Compl. 9, ECF No. 1.) "When an ERISA plan administrator's benefits decision has been arbitrary, the most common remedy is a remand for a fresh administrative decision rather than an outright award of benefits . . . ." *Holmstrom*, 615 F.3d at 778. In this case, the denial letters show that the Plan found that the Plaintiff failed to meet the procedural requirement stated in Plan Document § 10.03, meaning that the Plan did not reach the substantive issues found in Plan Document § 11. This case does not present the rare instance "where the record . . . contains such powerfully persuasive evidence that the only determination the plan administer could reasonably make is that the claimant is disabled" and entitled to benefits. *Majeski v. Metro. Life Ins. Co.*, 590 F.3d 478, 484 (7th Cir. 2009). Although the Court has held that the Plan must consider the Plaintiff's application as timely filed, the Court does not express an opinion on whether the Plaintiff is entitled to an award of disability benefits. The parties' briefing was

limited to the procedural issue, and the Plan Administrator, in the exercise of its sound discretion, may find on remand that the Plan Document precludes an award of benefits, or that any disability benefit awarded is subject to an offset.

## C.     Attorney's Fees and Costs

The Plaintiff's Complaint also requests an award of attorney's fees and costs. 29 U.S.C. § 1132(g)(1). Under ERISA, attorney's fees and costs may be awarded "to a party who achieves 'some degree of success on the merits.'" *Temme v. Bemis Co.*, 762 F.3d 544, 549 (7th Cir. 2014) (per curiam) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010)). A party may obtain attorney's fees and costs even if the case is remanded to the plan administrator. *See Huss v. IBM Med. & Dental Plan*, 418 Fed. App'x 498, 511 (7th Cir. 2011). In this case, the Plaintiff has achieved more than "trivial success on the merits" or a "purely procedural victory," *Hardt*, 560 U.S. at 255 (citation omitted), because this Court has reversed the Plan Administrator's denial of benefits and ordered the Plan to consider the Plaintiff's claim, which was the only issue presented. *Huss*, 418 Fed. App'x at 512 (affirming an award of attorney's fees when the district court remanded the case to the plan administrator); *Univ. of Wis. Hosp. & Clinics, Inc.*, 28 F. Supp. 3d at 842 (finding requirement of obtaining "some degree of success on the merits" met because the court granted summary judgment in the plaintiff's favor and remanded the case to the plan administrator).

Two approaches exist for analyzing whether attorney's fees and costs should be awarded in an ERISA case. *Temme*, 762 F.3d at 550 (observing that post-*Hardt*, the Seventh Circuit has affirmed both tests). The first test considers five factors: "(1) the degree of the offending parties' culpability or bad faith; (2) the degree of the ability of the offending parties to satisfy personally

an award of attorney's fees; (3) whether or not an award of attorney's fees against the offending parties would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions." *Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis., Inc.*, 657 F.3d 496, 505–06 (7th Cir. 2011) (citation and internal quotation marks omitted). The second test asks whether "the losing party's position was 'substantially justified.'" *Id.* (quoting *Quinn v. Blue Cross & Blue Shield Ass'n*, 161 F.3d 472, 478 (7th Cir. 1998)). Both tests essentially ask the same question, and although this Court uses the five-factor test, the result would be the same under both. *Kolbe & Kolbe*, 657 F.3d at 506.

Awarding attorney's fees and costs would be appropriate in light of the factors listed above.  In its denial letters, the Plan has explained its position by reiterating a requirement that, the Plan now concedes, is not present in the Plan Document or the SPD. Although the Plan did not change the basis for the denial, it unreasonably interpreted the Plan Document by adding a condition precedent. Further, the Plan has allowed the litigation to progress, rather than acknowledge its untenable position. The Plan also provides no details about the origin of (or the basis for) its decision to carefully scrutinize the identity of the person carrying out the physical act of filing the application, when the applicant would otherwise meet the eligibility requirements. Regarding deterrence, awarding attorney's fees and costs might prevent the Plan from manipulating its policy in other scenarios. The members of the Plan would also benefit because the Plan may be motivated to clarify the terms of the policy, avoiding the need for Plan representatives to answer members' individual questions by offering explanations that do not appear in the governing documents.

**CONCLUSION**

Since the Court will remand the case and award reasonable attorney's fees and costs in the same final judgment, the Court:

(1) DENIES the Defendant's Motion for Summary Judgment [ECF No. 16];

(2) WITHHOLDS entering judgment granting Plaintiff's Motion for Summary Judgment [ECF No. 10];

(3) ORDERS that the Plaintiff shall submit an itemized list of its reasonable attorney's fees and costs by January 29, 2016; and

(4) DIRECTS that the Defendant may file a response to Plaintiff's claim for attorney's fees and costs by February 8, 2016.

SO ORDERED on January 14, 2016.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION